## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### (Charlottesville Division)

| | |
|---|---|
| Robert Schilling, | |
| Plaintiff, | |
| v. | |
| Jake Washburne, *et al*. | |
| Defendants. | **Case No. 3:21-cv-22** |
| | **ROBERT SCHILLING'S OPPOSITION TO MOTION TO DISMISS** |

NOW COMES the Plaintiff, Robert Schilling, by and through undersigned counsel, and opposes the Motion to Dismiss filed by Defendants Mallek and Washburne.

### I.    Introduction

The Motion to Dismiss filed by defendants Washburne and Mallek begins with two faulty premises: First, the two defendants begin by arguing that this suit arose only because Mr. Schilling was delayed in voting for six minutes. Second, the two defendants mis-state or ignore a key allegation in the complaint regarding the nature of their liability as joint tortfeasors and/or civil conspirators. From those two faulty premises flows the remainder of defendants' legal analysis.

Unfortunately for the defendants, they cannot re-write the facts alleged in Mr. Schilling's complaint in an effort to dismiss the allegations it contains. While the Plaintiff is perplexed at the defendants' apparent suggestion that Constitutional violations for short periods of time are not actionable, Plaintiff reiterates that this suit did not arise because of a mere *delay* in voting. Instead, this case arose because Mr. Schilling, despite receiving assurances from Defendant Washburne prior to the election that he would be permitted to vote and arriving at the polls

expressly relying upon such assurances, was instead met with physical contact and attempts to eject him from the polling location when he attempted to exercise his rights. That Mr. Schilling received such hostile treatment at the apparent instigation of Defendant Mallek, the spouse of a member of Albemarle County's Board of Supervisors of whom Mr. Schilling has been a frequent critic, underscores the apparent unconstitutional motives for the assault Mr. Schilling suffered that day and for attempting to deprive him of his franchise.

Whether Mr. Schilling was prevented from voting for six minutes or six days is legally irrelevant to the merits of his underlying Constitutional, statutory, and state common law claims, but it is nevertheless noteworthy that in the six minutes at issue, Mr. Schilling was subjected to assault and close physical contact by pollworkers (one of whom removed a mask, and none of whom followed social distancing protocols that they were purportedly enforcing) that can hardly be characterized as expected occurrences for a citizen who is merely being "delayed."

## II.      Standard

"In deciding whether a complaint will survive a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." *E.I. du Pont de Nemours v. Kolin Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). In adjudicating a Motion to Dismiss under Rule 12 (b)(6), this Court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the nonmoving party." *Rockville Cars, LLC v. City of Rockville*, 891 F.3d 141, 145 (4th Cir. 2018).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (internal quotation marks omitted). However, *Iqbal*'s "plausibility standard is not a probability requirement…" *Hall v. DIRECTV,*

*LLC* 846 F.3d 757, 765 (4th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). "Although it is true that the complaint must contain sufficient facts to state a claim that is plausible on its face, it nevertheless need only give the defendant fair notice of what the claim is and the grounds on which it rests." *Id.* (internal quotation marks omitted).

### III.   Facts as Alleged in the Complaint

A complete and accurate reading Mr. Schilling's Complaint in this matter reveals the following key allegations:

- Defendants Wasburne and Mallek are aware of Mr. Schilling's opposition to the political positions taken by Mallek's spouse. (Paragraphs 4 and 40)

- Defendant Mallek, John Doe #1, and John Doe #2 acted in concert and with a common purpose in committing the various acts complained of. (Paragraph 8).

- Mr. Schilling arrived at the Woodbrook Precinct following assurances from Defendant Washburne that he would be permitted to vote and in reliance upon such assurances. (Paragraph 21).

- Mr. Mallek, who was purportedly enforcing a mask mandate and acting as the Chief Officer of the Election, removed his own mask to interact with Mr. Schilling and attempted to conceal his identity from Mr. Schilling. (Paragraph 25).

- Contemporaneous with Mallek's attempt to prevent Mr. Schilling from voting, John Doe #1 approached Mr. Schilling from behind, and ultimately engaged in bodily contact with Mr. Schilling. (Paragraphs 8 and 28).

- Mere moments after the confrontation initiated by Mallek and escalated by John Doe #1, Mr. Schilling was further confronted and subjected to a battery by John Doe #2. (Paragraphs 29-33).

- Close bodily contact was initiated by the Defendants, who were purportedly enforcing COVID-19 safety protocols, rather than by Mr. Schilling. (Paragraphs 37-39).

## IV.   Inferences from Pleaded Facts

Mr. Schilling's claim must be read not only in terms of his express allegations, but also in terms of the reasonable inferences that arise from those allegations. "When considering the sufficiency of a complaint's allegations under a Rule 12(b)(6) motion, courts must construe the complaint 'liberally so as to do substantial justice.'" *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Four-C-Aire, Inc.*, 929 F.3d 135, 152 (4th Cir. 2019), quoting *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). This Court has previously found it "reasonable to infer" from the entirety of a pattern of conduct that additional improprieties exist. *Moore v. Va. Cmty. Bankshares, Inc.*, Civil Action No. 3:19CV00045, 2020 U.S. Dist. LEXIS 112726, at *11 (W.D. Va. June 26, 2020).

Mr. Schilling's Complaint, especially when read liberally and with appropriate inferences, illustrates that he is a critic of a well-known (Democratic Party) politician in Albemarle County. He expressly inquired in advance of the Democratic Party's primary election whether he could vote without wearing a mask, and was given assurances by Defendant Washburne that he could. Nevertheless, when Mr. Schilling arrived at the precinct to vote, Defendant Washburne's Chief Officer of the Election in charge of that precinct attempted to bar Mr. Schilling from entering. Although he cited COVID protocols as an ostensible justification

for his actions, Defendant Mallek nevertheless removed his own mask. At that point, two subordinate officers of the election working under Mr. Mallek's immediate supervision and in his presence attempted to assist their boss in ejecting a lawful voter from the premises, committing various torts in the process. Like Defendant Mallek, the two John Does professed to be enforcing COVID protocols, but their behavior indicates that they were unafraid to engage in close and offensive bodily contact with Mr. Schilling, leading to an inference that their motivation was to impede him in the exercise of his franchise.

Mr. Schilling, at this juncture in the litigation, is entitled to the presumption that his allegations are true and to all reasonable inferences that can be made in his favor. He is entitled to the opportunity to prove, through discovery and at trial, that he was the victim of an organized attempt by all of the defendants (including the spouse of an incumbent politician) to prevent a well-known critic from voting in the Democratic Party primary.

### V.      The Complaint Provides Adequate Notice of Mr. Schilling's Claims

It is Mr. Schilling's obligation at this juncture only to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964 (2007), quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). Mr. Schilling raises five counts in this action. First, Mr. Schilling raises a 42 U.S.C. § 1983 claim. Second, Mr. Schilling raises a claim under the Voting Rights Act. Third, Mr. Schilling raises a state-law claim for assault. Fourth, Mr. Schilling raises a state-law claim for battery. Fifth, Mr. Schilling raises a state-law claim for false imprisonment. In each instance, Mr. Schilling has provided ample notice of his claims and the basis upon which each defendant is liable for them.

**Section 1983**

42 U.S.C. § 1983 is not itself a source of substantive rights, but rather provides a vehicle through which plaintiffs may challenge alleged deprivations of their constitutional rights. See generally *Carey v. Piphus*, 435 U.S. 247, 253, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) (42 U.S.C. § 1983 "was intended to '[create] a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secure[d]' to them by the Constitution" (quotation omitted)). To state a claim under § 1983, "a plaintiff must establish three elements . . . : (1) the deprivation of a right secured by the Constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Jenkins v. Medford*, 119 F.3d 1156, 1159-60 (4th Cir. 1997); see also *Brown v. Mitchell*, 308 F. Supp. 2d 682, 692 (E.D. Va. 2004) (citations omitted) ("[A] plaintiff must show that the defendant, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained of injury.").

"When a plaintiff brings a Section 1983 claim against a government entity such as a municipality, liability attaches only if 'an official policy or custom' caused the 'unconstitutional deprivation of the plaintiff's rights.'" *White Coat Waste Project v. Greater Richmond Transit Co.*, Civil Action No. 3:17cv719, 2018 U.S. Dist. LEXIS 164673, at *10 (E.D. Va. Sep. 25, 2018), quoting *Brown v. Mitchell*, 308 F. Supp. 2d. at 692 and citing *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). However, in this case Mr. Schilling is not suing a government entity or municipality or making a *Monell* claim against a corporate entity or anyone other than a natural person.

In this case, Mr. Schilling has pleaded facts and alleged that he was deprived of his right to vote and subjected to physical assault in an attempt to exercise that right. He has named individual defendants, all of whom are natural persons who were responsible for the conduct

alleged. Further, Mr. Schilling has made plain that the acts complained of were committed by individuals who were all acting under color of Virginia law. Although the defendants attempt to ignore certain of Mr. Schilling's allegations or to twist Mr. Schilling's allegations into a *Monnell* municipal liability claim and to dismiss it on that basis, Mr. Schilling is entitled to have the defendants answer the complaint he has actually filed and the specific allegations he has put the defendants on notice of rather than a hypothetical complaint the defendants might wish he had filed.

### Voting Rights Act

Mr. Schilling's second cause of action is based on 52 U.S.C. § 10307. The Complaint expressly cites (at paragraph 55) two cases that set forth the basis for a private cause of action in such claims. One of those cases is from the U.S. District Court for the Eastern District of Virginia and directly involved voting in the Commonwealth.

In *LULAC v. Pub. Interest Legal Found.*, No. 1:18-cv-00423, 2018 U.S. Dist. LEXIS 136524, at *7 (E.D. Va. Aug. 13, 2018), the U.S. District Court for the Eastern District of Virginia explained that the statute creates a private cause of action which is not duplicative of or coextensive with Section 1983, and that the elements of such a claim are governed by the plain text of the statute:

> As to the issue of whether § 11(b) claims can be brought against non-state actors, the statutory text is dispositive. The relevant portion of § 11(b) reads:
>
> No person, whether acting under color of law *or otherwise*, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote.

*LULAC* also makes plain that the basis for federal jurisdiction in the Voting Rights Act context is the Constitution's Elections Clause, which works "in tandem" with the Constitutional guarantees of the 15th amendment.

In this suit, Mr. Schilling alleges that when he arrived at the polls, he was intimidated for attempting to vote, hindered in exercising his right to vote, and that three of the defendants attempted to eject him from the polling precinct in various ways. That Mr. Schilling ultimately voted approximately six minutes later – after suffering an assault from two John Does and following Defendant Mallek's attempt to turn him away at the door – is of no moment because the relevant statute also penalizes mere "attempt" to intimidate. Simply put, Mr. Schilling has stated facts sufficient to put the defendants on notice of the nature of his Voting Rights Act claim, which is not coextensive with his 1983 claim.

### Assault, Battery, and False Imprisonment

It appears that the two defendants do not seriously challenge that Mr. Schilling has stated a claim for assault, battery, or false imprisonment. Instead, their brief focuses on the assertion that Defendant Mallek and Defendant Washburne do not employ John Does 1 and 2 and therefore cannot be held responsible under the doctrine of *respondeat superior*.

Mr. Schilling must first reiterate, as he has elsewhere, that the two defendants appear to ignore the theories of liability which are found at paragraph 8 of the complaint, in favor of focusing on allegations relating to *respondeat superior*. Even leaving aside the allegations of paragraph 8 of the Complaint, however, the two defendants have badly misstated both Mr. Schilling's claims based upon the doctrine of *respondeat superior*, and the doctrine itself.

Under Virginia law, which governs Mr. Schilling's state law claims, "Respondeat superior imposes liability upon a party for the tortious acts of *its agents* or employees."

*McConville v. Rhoads*, 67 Va. Cir. 392, 395 (Cir. Ct. 2005), citing *McDonald v. Hampton Training School for Nurses,* 254 Va. 79, 81, 486 S.E.2d 299, 300 (1997) (*emphasis added*). Thus, *respondeat superior* does not only apply when a formal employment relationship exists, but also governs liability for agents of a principal. Defendants' apparent premise that only corporate  or organizational employers can be vicariously liable under the doctrine of *respondeat superior* is in error.

Moreover, under Virginia law and even in cases involving more typical employer/employee relationships and the doctrine of *respondeat superior*, "a principal-agent relationship may be inferred by the actions of those involved and surrounding facts and circumstances of the case, and is normally a question to be resolved by the jury." *Magallon v. Wireless Unlimited Inc.*, 85 Va. Cir. 460, 463 (Cir. Ct. 2012), citing *Acordia of Va. Ins. Agency, Inc. v. Genito Glenn*, L.P., 263 Va. 377, 384, 560 S.E.2d 246 (2002). In this case, Mr. Schilling alleges that after writing to Defendant Washburne prior to the election, and following an initial confrontation on Election Day initiated by Defendant Mallek, the two John Does (both of whom were subordinate to Mallek in his role as Chief Officer of the Election and to Washburne in his role as General Registrar) attempted to physically eject Mr. Schilling from the Woodbrook Precinct. It is a natural inference from such allegations that the two John Does were assisting their supervisors and carrying out the wishes of such supervisors. To the extent that the defendants attempt to impugn Mr. Schilling's allegations relating to an agency relationship between the various defendants, their opportunity to do so is at trial rather than in a 12(b)(6) motion.

## VI.    The Two Defendants are Necessary Parties

Even leaving aside Mr. Schilling's claims for damages, the two named defendants in this matter are necessary parties if Mr. Schilling is to be accorded injunctive relief. Fed. R. Civ. P. 19 (a). A party is "necessary" under Rule 19(a) if, "in his absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). In this case, Mr. Schilling seeks, among other forms of relief, an injunction which will protect his right to vote prospectively. Such an injunction would necessarily need to govern the behavior of the two named defendants.

With respect to Defendant Washburne, in addition to the allegations that he is responsible for his own acts (including acts which induced Mr. Schilling to arrive at the polls unprepared for the assault he would subsequently face) and allegations that he is responsible for the acts of his subordinate officers of the election under doctrines of vicarious liability, the Complaint alleges that Washburne "is the General Registrar of Voters in Albemarle County" and that he "manages the operation of polling places and precincts." (Paragraph 3). With respect to Defendant Mallek, in addition to allegations that he is responsible for his own acts (which included denying Mr. Schilling admission to the polling place and instigating the confrontation by his subordinates John Doe # 1 and John Doe # 2), the Complaint also alleges that Mallek is the Chief Officer of the Election at the Woodbrook Precinct (Paragraph 4). According to the Virginia Department of Elections, the "Chief Officer… is an experienced officer of election and receives more in-depth training; supervises and oversees all officers of election and polling place operations on Election Day. The chief is responsible for making sure polls open and close on time and all supplies, forms and ballots are verified and accounted for. The chief can answer most questions on

Election Day and knows how and when to escalate issues to the General Registrar or other authorities."[1]

Simply put, it will be impossible for this Court to accord complete relief to Mr. Schilling in the form of an injunction, if that relief does not bind the County's General Registrar and the Chief Officer of the Election at the precinct where Mr. Schilling votes.

**VII.    Conclusion**

For all of the reasons set forth herein, the Motion to Dismiss filed by defendants Mallek and Washburne should be denied.[2]

Respectfully submitted this the 6th day of August, 2021,

ROBERT SCHILLING
By Counsel

/s/ Matthew D. Hardin
Matthew D. Hardin, VSB #87482
Hardin Law Office
1725 I Street, Suite 300
Washington, DC 20006
Phone: (434) 202-4224
Email: Matt@MatthewHardin.com

---

[1] See https://www.elections.virginia.gov/officer-of-elections/, archived at Exhibit A.

[2] As Mr. Schilling has noted in previous filings, it is his intention to amend his Complaint both to identify the two John Doe defendants and to address the possible addition of other defendants. As such, should the Court grant the motion to dismiss in whole or in part, Mr. Schilling would request that the order make clear that such dismissal is without prejudice to any future motion for leave to amend or to rejoin such defendants under Rule 19.