## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### (Charlottesville Division)

ROBERT SCHILLING,

                      Plaintiff,

v.

LEO MALLEK,
DAVID CAREY, and
LAWRENCE BOUTERIE,

                      Defendants.

**Case No. 3:21-cv-22**

**FIRST AMENDED COMPLAINT
FOR DAMAGES AND FOR
DECLARATORY AND INJUNCTIVE
RELIEF**

Serve:

Leo Mallek
4826 Advance Mills Road
Earlysville, VA 22936

David Carey
839 Tillman Rd.
Charlottesville, VA 22901

Lawrence Bouterie
1521 Still Meadow Cove
Charlottesville, VA 22901

## INTRODUCTION

1.     Plaintiff Robert Schilling brings this suit against three elections officials in Albemarle

County, Virginia. This suit arises from events that took place on the day of the Democratic Party

primary election on June 8, 2021 at the Woodbrook Precinct in Albemarle County, and raises

claims under 42 U.S.C. 1983 and 52 U.S.C. 10307(b), as well as state law claims for assault,

battery, and false imprisonment. This case also seeks declaratory and injunctive relief that will protect Mr. Schilling in the exercise of his rights prospectively.

## PARTIES

2.       Plaintiff Robert Schilling is a resident, domiciliary, and citizen of Albemarle County, the Commonwealth of Virginia, and of the United States. He is qualified to vote in Albemarle County and is a registered voter in Albemarle County. He is also a radio and internet journalist, and an activist on various issues relating to government at the state, local, and federal level. Mr. Schilling is known in the community to be affiliated with conservative causes and was previously elected as a Republican to the Charlottesville City Council. Mr. Schilling is known to be critical of the members of the Albemarle County Board of Supervisors.

3.       Defendant Leo Mallek is a resident, domiciliary, and citizen of Albemarle County, of the Commonwealth of Virginia, and of the United States. Upon information and belief, Defendant Mallek is the lawful spouse of an elected member of the Board of Supervisors in Albemarle County. On June 8, 2021, Mr. Mallek served as the "Chief Officer of Election" or "Chief Officer of the Election" at the Woodbrook Precinct. In that role, Mr. Mallek exercised powers granted to him under color of the laws of the Commonwealth of Virginia.

4.       According to the Virginia Department of Elections, the "Chief Officer… is an experienced officer of election and receives more in-depth training; supervises and oversees all officers of election and polling place operations on Election Day. The chief is responsible for making sure polls open and close on time and all supplies, forms and ballots are verified and

2

accounted for. The chief can answer most questions on Election Day and knows how and when to escalate issues to the General Registrar or other authorities."[1]

5.      Defendant David Carey was a pollworker and/or assistant officer of election who worked at the Woodbrook Precinct on June 8, 2021. In that capacity, he exercised authority under color of the laws of the Commonwealth of Virginia and answered to Defendant Mallek, who had the authority to supervise his work and assign him various duties.

6.      Defendant Lawrence Bouterie was a pollworker and/or assistant officer of election who worked at the Woodbrook Precinct on June 8, 2021. In that capacity, he exercised authority under color of the laws of the Commonwealth of Virginia and answered to Defendant Mallek, who had the authority to supervise his work and assign him various duties.

7.      At all times stated herein and relevant hereto, Defendants were acting under color of state law.

8.      It is alleged that Defendant Mallek, Dafendant David Carey, and Defendant Lawrence Bouterie are liable for the actions of one another because they acted in concert and with a common purpose at the Woodbrook Precinct to commit the underlying torts alleged herein. As such, those defendants were engaged in a civil conspiracy to commit the acts alleged herein and/or are joint tortfeasors.

9.      It is alleged that the acts committed by David Carey took place in the presence of and with the tacit approval of Leo Mallek, who was serving in his role as Chief Officer of the Election as described elsewhere herein at the time.

---

[1] See https://www.elections.virginia.gov/officer-of-elections/, ECF No. 17-1. Plaintiff hereby incorporates the entirety of the document at issue by reference.

10.     It is alleged that the acts committed by Lawrence Bouterie took place in the general vicinity of Leo Mallek and during the time that Leo Mallek was serving as Chief Officer of the Election. On information and belief, based upon the totality of the circumstances and the respective roles of the assistant elections officers vis-à-vis the Chief Officer of the Election, Lawrence Bouterie would not have been empowered to take the actions complained of herein without authority or direction from Leo Mallek.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action because it arises primarily under federal law. Plaintiff's leading claims arise under 42 U.S.C. § 1983 and 52 U.S.C. §10307(b), and the state claims at issue herein arose from the same alleged course of conduct.

12.     This Court has supplemental jurisdiction over state law claims raised herein pursuant to 28 U.S.C. § 1367.

13.     This Court has jurisdiction to grant injunctive and prospective relief pursuant to 28 U.S.C. §§ 2201 and 2202 because certain of the violations of Plaintiff's rights discussed herein are likely to be repeated absent such relief and a full declaration of the Plaintiff's rights. Plaintiff's claims for declaratory and injunctive relief are also authorized by Rules 57 and 65 of the Federal Rules of Civil Procedure, by the general legal and equitable powers of this Court, and by 28 U.S.C. § 1651.

14.     Venue is proper in this District under 28 U.S.C. § 1391(b) because, on information and belief, the Plaintiff and each of the defendants are all residents of the Western District of Virginia. Further, on information and belief, all defendants are residents of Virginia. Further, all or substantially all of the acts and omissions which give rise to the claims at issue herein took place within the Western District of Virginia.

15.     Venue is proper in the Charlottesville Division pursuant to Local Civil Rule 2 (a)(3)  and

2(b) because, on information and belief, all defendants are residents of a locality within the

Charlottesville Division. Further, all or substantially all of the acts and omissions which are at

issue in this case took place within Albemarle County.

**FACTS - BACKGROUND**

**A.  The COVID-19 Pandemic**

16.     COVID-19 is an infectious disease affecting the respiratory system, which was first

identified in 2019, in Wuhan, China. Since then, it has spread globally and is now present in all

50 states.

17.     On or about May 29, 2020 Governor Northam first issued what was commonly termed a

"Mask Mandate" in the Commonwealth of Virginia. That mandate, imposed in the Governor's

executive Order Number 63, had numerous exceptions, including exceptions for those with

certain medical conditions, and was amended and reissued in substantially similar form through

the remainder of 2020 and early 2021. At all times relevant hereto, Governor Northam's order

prohibited any individual from being required to provide proof of a medical condition in order to

demonstrate entitlement to an exemption from the requirement to wear a mask.

18.     On or about May 15, 2021, Virginia's mask mandate was substantially repealed when the

Governor's orders requiring masks were amended to include language merely recommending

masks in most situations. Social distancing and capacity restrictions were ended by Governor

Northam on or about May 28, 2021, and Governor Northam announced that Virginia's statewide

"State of Emergency" related to the COVID-19 pandemic would expire on or about June 30, 2020.[2]

### B.  U.S. Constitutional Law

19.    "Undeniably, the Constitution of the United States protects the right of all qualified citizens to vote, in state as well as in federal elections. A consistent line of cases by [the U.S. Supreme] Court in cases involving attempts to deny or restrict the right of suffrage has made this indelibly clear." *Reynolds v. Sims*, 377 U.S. 533, 554 (1964).

20.    The United States Supreme Court has expressly held that the Constitutional right to vote includes the right to vote in state primary elections. See *Smith v. Allwright*, 321 U.S. 649 (1944)

21.    Neither the Commonwealth of Virginia nor any of the named individual defendants possess a compelling justification to hinder Mr. Schilling in the exercise of his franchise, to require Plaintiff to wear a mask to exercise his right to vote, or to require Plaintiff to vote in a different manner than any other voter is permitted to vote.

22.    Courts have consistently held that to intimidate a voter in the exercise of his franchise constitutes a violation of the Constitution and federal statutory law. For example, in *Katzenbach v. Original Knights of Ku Klux Klan*, 250 F.Supp. 253, 353 (E.D. La. 1965), the Court held that "violence and intimidation… alloyed the purity of the federal political process."

### FACTS: ELECTION DAY

23.    Prior to Election Day (June 8, 2021), Mr. Schilling wrote to Jake Washburne, who is the General Registrar in Albemarle County and chiefly responsible for the day-to-day conduct of the

---

[2] Upon expiration of Virginia's state of emergency, the Governor's waiver of the general statutory prohibition of mask-wearing in Virginia would likewise expire. See Va. Code 18.2-422(iv)(b). At such time, it will constitute a felony for an individual to wear a mask unless certain enumerated exceptions apply.

Albemarle County Electoral Board. Mr. Washburne confirmed to Mr. Schilling that masks would not be required to vote on Election Day.

24.    On June 8, 2021, Mr. Schilling arrived at the Woodbrook Precinct in Albemarle County in order to exercise his right to vote in Virginia's Democratic Party Primary.

25.    Upon entering the precinct, he was met by Leo Mallek. Mr. Mallek, who was initially wearing a blue surgical mask, stated that Mr. Schilling also needed to wear a mask.

26.    Mr. Schilling declined. "I'm not wearing a mask," he stated. "I'm here to vote today. I have an exemption from the Governor."

27.    Mr. Mallek then lowered his mask. Mr. Schilling inquired as to Mr. Mallek's identity. Mallek then declined to provide his name.

28.    Schilling reiterated: "I'm here to vote!"

29.    At that point, David Carey approached Mr. Schilling from behind. Leo Mallek remained in front of Mr. Schilling and otherwise in the immediate vicinity for the entire encounter that followed.

30.    Mr. Carey attempted to convince Mr. Schilling to exit the building and stood in front of Mr. Schilling in such a way that Mr. Schilling was prevented from moving forward into the polling area. When Mr. Schilling attempted to walk around Mr. Carey, Mr. Carey stepped in front of Mr. Schilling while he was in motion, causing bodily contact. Mr. Carey then grabbed Mr. Schilling's arm and or shoulder. This interaction took place in Mr. Mallek's presence and with his tacit approval. On information and belief, Mr. Mallek was deliberately indifferent to the acts taken against Mr. Schilling in his presence or had a policy to permit such acts. Mr. Mallek did not reprimand or otherwise take action to prevent Mr. Carey from engaging in the conduct complained of herein.

31.     Schilling exclaimed, "You cannot block me from voting! Take your hands off me!" Once Mr. Carey's hands were removed, Schilling proceeded around him into the polling area.

32.     Once inside the polling area, Schilling was speaking with additional, unnamed pollworkers when he was approached from behind by Lawrence Bouterie.

33.     Mr. Bouterie put his hands on Mr. Schilling's arm and/or shoulder and demanded that Mr.Schilling "Come with me."

34.     Schilling again stated "Don't touch me!"

35.     Lawrence Bouterie stated "We're going to go outside." Mr. Schilling repeatedly declined to go outside. "I'm not going outside. You can't tell me I can't vote." Mr. Schilling's "invitation" to go outside was either a threat to engage in a further altercation, or alternatively was a command for Mr. Schilling to vote outdoors in a different manner from other voters and with less safeguards for his ballot.

36.     One of the pollworkers who was present but is not a defendant in this suit placed a call to Mr. Washburne in which he loudly stated "We have a problem! We have a voter who refuses to wear a mask!"

37.     From the time Mr. Schilling entered the precinct until he was finally permitted to vote, approximately seven minutes elapsed.

38.     Had Mr. Schilling been permitted to vote without delay and hindrance as described herein, he would have spent less time at the polling location and at the Precinct generally.

39.     Had Mr. Schilling been permitted to vote without delay and hindrance as described herein, he would not have been in close contact, including but not limited to direct bodily contact, with Defendants Mallek, Carey, and Bouterie.

40.     There was no line or wait to vote at the time Mr. Schilling arrived to vote on Election Day. But for the actions of the defendants, Mr. Schilling would have cast his vote in approximately two minutes or less, without coming into close contact with any individual, including but not limited to the defendants.

41.     The willingness of Defendants Mallek, Carey, and Bouterie, to make close bodily contact with Mr. Schilling in a purported or ostensible effort to ensure the safety of Mr. Schilling and others from a viral disease underscores and gives rise to the inference that the true purpose of the defendants was not to protect the Woodbrook Precinct and its visiotors from an outbreak, but was instead an effort to intimidate Mr. Schilling in the exercise of his franchise on the day of the Democratic Party's primary election. Further giving rise to this inference is the fact that Mr. Mallek was himself unmasked at the time that the events complained of herein began to unfold.

42.     Upon information and belief, Defendant Mallek was aware, prior to Election Day, of Mr. Schilling's history as a Republican elected official and as a critic of the Albemarle County Board of Supervisors. This awareness, coupled with the inscrutable decision of the defendant pollworkers, including the Chief Officer of the Election and lawful spouse of a member of the Board of Supervisors, to come into close bodily contact with Mr. Schilling and to prolong the duration that he was at the polls, all in a purported and/or ostensible effort to enforce an inapplicable mask mandate, gives rise to the inference that the behavior at issue was motivated by an attempt to prevent Mr. Schilling from voting or to hinder him in the exercise of his franchise for an improper and/or retaliatory purpose.

## CLAIMS FOR RELIEF

## COUNT ONE: VIOLATION OF RIGHT TO VOTE & 42 U.S.C. §1983

43.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

44.    This count seeks relief against all defendants.

45.    Under 42 U.S.C. § 1983, every person who, under color of state law, subjects any citizen of the United States to the deprivation of "rights, privileges, or immunities secured by the Constitution and laws," shall be liable to the injured party.

46.    Defendants' actions intimidated Mr. Schilling in the exercise of his franchise and violated his Constitutional right to vote. He is therefore entitled to a remedy under 42 U.S.C. § 1983.

47.    Defendants have no governmental interest so compelling as to justify the denial or abridgement of Plaintiff's rights as guaranteed by the United States Constitution.

48.    Assuming, *arguendo*, that defendants had such an interest, defendants have less restrictive means by which any of their legitimate interests could be met.

49.    Plaintiff has no adequate legal, administrative, or other remedy by which to prevent or minimize the continuing irreparable harm to his Constitutional rights.

50.    Plaintiff was not contributorily negligent in any way.

51.    Plaintiff continues to reside in Albemarle County and expects to vote in ensuing elections. In light of Mr. Washburne's assurances prior to arriving at the Woodbrook Precinct on June 8, 2021 that Mr. Schilling would be permitted to vote without a mask, and the acts of the defendants to prevent Mr. Schilling from voting and/or to delay or hinder him in the exercise of his franchise despite such assurances, Mr. Schilling has reason to fear that he will be treated similarly in future elections. Specifically, Mr. Shilling has reason to fear that he will again be

prevented from voting, hindered or delayed in voting, or face tortious conduct as he attempts to vote, in future elections.

52.    Plaintiff is entitled to declaratory and permanent injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202.

53.    Plaintiff is further entitled to relief in the form of a monetary judgment and to relief in the form of a judgment for his attorney's fees.

## COUNT TWO: VIOLATION OF 52 U.S.C. 10307

54.    Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

55.    This count seeks relief against all defendants.

56.    52 U.S.C. §10307(b) provides that "No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any persons to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under [ various provisions]."

57.    Multiple courts, including at least one federal Court sitting in Virginia, have found that the statute extends to private conduct and establishes a private cause of action. *Nat'l Coal. on Black Civic Participation v. Wohl*, No. 20 Civ. 8668 (VM), 2021 U.S. Dist. LEXIS 27059, 2021 WL 480818, at *5 (S.D.N.Y. Jan. 12, 2021) (collecting cases); and *League of United Latin Am. Citizens -Richmond Region Council 4614 (LULAC) v. Pub. Interest Legal Found*, No. 1:18-cv-00423, 2018 U.S. Dist. LEXIS 136524, 2018 WL 3848404, at *3 (E.D. Va. Aug. 13, 2018) (holding that the statute reaches private conduct).

58.     By attempting to bar the Plaintiff from the polls on Election Day, by hindering and delaying him in the exercise of his franchise, and by subjecting him to a physical assault while he was attempting to exercise his rights to vote, the defendants, acting in concert, have violated 52 U.S.C. §10307(a).

59.     Mr. Schilling is therefore entitled to relief in the form of a monetary judgment against the defendants redressing his actual damages and in the form of an injunction which will protect him in the exercise of his rights in future elections.

## COUNT THREE: ASSAULT

60.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

61.     This count seeks relief against Defendants David Carey and Lawrence Bouterie for their own actions. This count seeks relief against Defendant Leo Mallek under the doctrine of *respondeat superior*, and/or because Leo Mallek acted in concert with the other defendants as joint tortfeasors or as part of a civil conspiracy.

62.     "The tort of assault consists of an act intended to cause either harmful or offensive contact with another person or apprehension of such contact, and that creates in that other person's mind a reasonable apprehension of an imminent battery." *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003) (internal citations omitted).

63.     David Carey committed a battery upon Mr. Schilling when he attempted to enter the polling area. In the moment leading up to that battery, Mr. Schilling reasonably feared an imminent battery.

64.     Lawrence Bouterie committed a battery upon Mr. Schilling when he snuck up on Mr. Schilling from behind after he had entered the polling area. Mr.Bouterie also told Mr. Schilling

that they were "going outside," which language reasonably suggests the possibility for further acts of battery. In light of the foregoing, Mr. Schilling reasonably feared an imminent battery.

## COUNT FOUR: BATTERY

65.     Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

66.      This count seeks relief against Defendants David Carey and Lawrence Bouterie for their own actions. This count seeks relief against Defendant Leo Mallek under the doctrine of *respondeat superior*, and/or because Leo Mallek acted in concert with the other defendants as joint tortfeasors or as part of a civil conspiracy.

67.      "The tort of battery is an unwanted touching which is neither consented to, excused, nor justified." *Koffman v. Garnett*, 265 Va. 12, 16, 574 S.E.2d 258, 261 (2003) (internal citations omitted).

68.     Without justification, consent, or excuse of any kind, Defendants Carey and Bouterie each put hands on Mr. Schilling in an attempt to prevent him from exercising his franchise, and/or in an attempt to hinder and/or delay Mr. Schilling in exercising his franchise.

69.     David Carey put his hands on Mr. Schilling in order to prevent him from entering the polling area.

70.     Lawrence Bouterie put his hands on Mr. Schilling in a bid to eject him from the polling area.


## COUNT FIVE:  FALSE IMPRISONMENT

71.     Under Virginia law, false imprisonment is "the direct restraint by one person of the physical liberty of another without adequate legal justification." *W T Grant Co. v. Owens*, 149

Va. 906, 921, 141 S.E. 860 (1928). "[T]he gist of the action is the illegal detention of the person, without lawful process, or the unlawful execution of lawful process." *Montgomery Ward v. Wickline*, 188 Va. 485,489, 50 S.E.2d 387 (1948). "To maintain an action for false imprisonment is not necessary to show malice, ill will or the slightest wrongful intention, and neither the good faith of a defendant nor that of his employee will defeat a plaintiff's right to recover." *Zayre of Va., Inc. v. Gowdy*, 207 Va. 47, 51, 147 S.E.2d 710 (1966).

72.     This count seeks relief against Defendant Leo Mallek and David Carey for their own actions. This count also seeks relief against Defendant Mallek because he acted in concert with David Carey as joint tortfeasors or as part of a civil conspiracy.

73.     Although Defendant Mallek's attempt to stand in Mr. Schilling's way and bar him from entering the polling area was ultimately unsuccessful, defendant Mallek nevertheless restrained Mr. Schilling's movement when he attempted to stand in Mr. Schilling's way.

74.     Although David Carey's attempt to prevent Mr. Schilling from entering the polling area was ultimately unsuccessful, Defendant Carey  nevertheless restrained Mr. Schilling's movement by standing in his way and putting his hands on Mr. Schilling.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court:

A.     To enter an injunction preventing the named defendants from preventing Mr. Schilling from voting or hindering him in the exercise of his franchise based on any ostensible failure to wear a face mask in future elections.

B.     To enter a judgment declaring that Mr. Schilling's right to vote and other related rights under the U.S. Constitution and other applicable law were violated by the actions of the defendants as set forth herein;

14

**C.**     To enter a judgment awarding Mr. Schilling actual and nominal damages from the acts of

the defendants complained of herein in an amount not less than $100, to be established at trial, in

addition to punitive damages;

**D.**     To award Plaintiff his attorneys' fees and costs pursuant to 42 U.S.C. § 1988, Rule 3:25

of the Rules of the Supreme Court of Virginia, Fed. R. Civ. P. 54(d), other applicable law, or

some combination of the foregoing; and

**E.**     To grant such other and further relief as the Court deems just and proper.

<u>**JURY TRIAL DEMAND**</u>

Plaintiff hereby demands trial by jury of all issues raised herein which are so triable.

Respectfully submitted this the 18th day of October, 2021,

ROBERT SCHILLING
By Counsel

/s/ Matthew D. Hardin
Matthew D. Hardin, VSB #87482
Hardin Law Office
1725 I Street, Suite 300
Washington, DC 20006
Phone: (434) 202-4224
Email: Matt@MatthewHardin.com